IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **ERIKA HEADS**, *individually and on behalf of all others similarly situated,*<br><br>**Plaintiff,**<br><br>-v-<br><br>**MAPLECOVERAGE,**<br><br>**Defendant.** | Civil Case Number:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Erika Heads ("Plaintiff") brings this putative class action individually and on behalf of all others similarly situated (collectively the "Plaintiffs"), seeking statutory and other damages against Defendant MapleCoverage ("Maple" or "Defendant") and alleges, based on Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

**NATURE OF THE ACTION**

1. This is a putative class action under the 47 U.S.C. § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA"), arising from Defendant's systematic and repeated violations of the TCPA and its implementing regulations.

2. Plaintiff also brings this action under 47 C.F.R. § 64.1200(d), which requires telemarketers to maintain an internal do-not-call list and honor individual do-not-contact requests.

3. Defendant violated this rule by repeatedly contacting Plaintiff after she clearly and unambiguously revoked any prior consent and requested no further communications. Defendant failed to maintain and honor an internal do-not-call list, as required by law.

1

4. Defendant also used an autodialer, or a system that functions as the equivalent of an ATDS, to send promotional messages to Plaintiff and the putative Class, without obtaining prior express written consent in violation of 47 U.S.C. § 227(b).

5. Defendant operates an auto insurance provider throughout the United States.

6. To promote its services, Defendant sends autodialed telemarketing text messages to clients.

7. Plaintiff began receiving telemarketing text messages sent to her phone number from Defendant.

8. Plaintiff communicated to Defendant that she did not wish to be contacted. Nonetheless, Plaintiff received multiple additional automated telemarketing messages from the Defendant.

9. By failing to honor do-not-call requests after receiving requests for the communications to stop, Defendant has harmed hundreds, if not thousands, of consumers.

10. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the ensuing invasion of privacy, aggravation and disruption of the daily life of countless individuals. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies.

**PARTIES**

11. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Atlanta, Georgia, and the sole subscriber and primary user of the cellular telephone number ***-***-7073 (the "7073 Number").

12. Defendant MapleCoverage ("Maple" or "Defendant") is a "person" as defined by 47 U.S.C. § 153(39) that maintains its headquarters in Beaverton, Oregon. Defendant directs, markets, and provides business activities throughout the State of Georgia and the United States.

## JURISDICTION, VENUE, AND STANDING

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

14. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the wrongful conduct giving rise to this lawsuit took place within this judicial District.

15. Plaintiff has standing to maintain this action because Plaintiff suffered a legal injury as a result of Defendant's violations of the TCPA, and because she is not requesting an advisory opinion from this Court. Thus, Plaintiff has a sufficient stake in a justiciable controversy and seeks to obtain judicial resolution of that controversy.

## STATUTORY BACKGROUND

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

17. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

18. The TCPA and its implementing regulations require that any person or entity engaging in telemarketing must maintain its own internal do-not-call list and must record and

3

honor individual requests not to be contacted. 47 C.F.R. § 64.1200(d). These protections apply equally to calls and text messages made to wireless numbers.

19. In addition to the internal do-not-call protections, the TCPA prohibits any person from making calls or sending text messages to a cellular telephone number using an automatic telephone dialing system ("ATDS" or "autodialer") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). The term "call" includes text messages. FCC regulations and judicial interpretations have clarified that technologies that send mass text messages without human intervention or that dial from a stored list of numbers may qualify as autodialers, even if they do not randomly or sequentially generate numbers. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; *Facebook, Inc. v. Duguid*, 592 U.S. 395, 403 (2021).

20. The FCC has further defined the standard of consent for autodialed marketing messages. "Prior express written consent" is required before a caller can lawfully place telemarketing calls or send text messages using an autodialer to a consumer's wireless number. Such consent must be in writing, must bear the signature of the person called, and must clearly authorize the seller to deliver advertisements or telemarketing messages using an autodialer or prerecorded voice. 47 C.F.R. § 64.1200(f)(9). The agreement must also include a clear and conspicuous disclosure informing the consumer that consent is not a condition of purchasing any goods or services.

21. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly,

unlikely to be effective, or place an inordinate burden on the consumer. TCPA, Pub. L. No. 102-243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, No. 11-C-5886, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

## FACTUAL ALLEGATIONS

22. Defendant owns and operates MapleCoverage, an auto insurance provider headquartered in Beaverton, Oregon.

23. To promote its services, Defendant engages in sending autodialed telemarketing text messages to clients.

### *INTERNAL DO NOT CALL REGISTRY AND AUTODIALED NO CONSENT*

24. On July 9, 2025, Plaintiff received a telemarketing text message from Maple.

25. Plaintiff did not consent to being contacted by Maple nor did she want any further communication from Defendant, so she replied with the word "STOP" and received a confirmation message that she had been unsubscribed from further texts.

26. Despite this, on July 15, 2025, Plaintiff received another telemarketing text message from the same number on Maple's behalf, promoting the company's updated rates.

27. On July 16, 2025, Plaintiff received two additional telemarketing text messages promoting Defendant's services.

28. On July 18, 2025, Plaintiff received yet another telemarketing text message promoting Defendant's services.

29. On July 19, 2025, Plaintiff received yet another telemarketing text message promoting Defendant's services.

30. On July 21, 2025, Plaintiff received yet another telemarketing text message promoting Defendant's services.

31. On July 22, 2025, Plaintiff received yet another telemarketing text message promoting Defendant's services.

32. On July 23, 2025, she received yet another telemarketing text message from Maple. Plaintiff, again, replied with the word "STOP" and received a subsequent confirmation that she had been unsubscribed from further texts.

33. Despite this, on July 25, 2025, Plaintiff received another telemarketing text message from the same number on Maple's behalf, promoting the company's services.

34. On July 26, 2025, Plaintiff received yet another telemarketing text message promoting Defendant's services.

35. On July 29, 2025, Plaintiff received yet another telemarketing text message promoting Defendant's services.

36. On July 30, 2025, she received yet another telemarketing text message from Maple. Plaintiff, again, replied with the word "STOP" and received a subsequent confirmation that she had been unsubscribed from further texts.

37. Despite this, on August 1, 2025, Plaintiff received another telemarketing text message from the same number on Maple's behalf, promoting the company's services.

38. On August 2, 2025, Plaintiff received yet another telemarketing text message promoting Defendant's services.

6

39. On August 4, 2025, Plaintiff received yet another telemarketing text message promoting Defendant's services.

40. On August 6, 2025, she received yet another telemarketing text message from Maple. Plaintiff, again, replied with the word "STOP" and received a subsequent confirmation that she had been unsubscribed from further texts.

41. On August 7, 2025, she received yet another telemarketing text message from Maple. Plaintiff, again, replied with the word "STOP" and received a subsequent confirmation that she had been unsubscribed from further texts.

42. Plaintiff continues to receive additional telemarketing text messages from Defendant, promoting the company's services.

43. Plaintiff did not make any agreement to be contacted or marketed to using automated text messaging with Defendant, nor did Defendant obtain prior express written consent.

44. Plaintiff received the subject text messages from within this judicial District and, therefore, Defendant's violation of the TCPA occurred within this District.

45. The purpose of Defendant's text messages was to promote and solicit the services offered by Defendant.

46. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

47. To the extent that Defendant had any consent to contact Plaintiff, that consent was expressly revoked when Plaintiff responded "Stop" to Maple's messages on July 9, 2025, July 23, 2025, July 30, 2025, August 6, 2025, and August 7, 2025.

48. Despite this, Defendant sent Plaintiff automated telemarketing text messages on: (a) July 15, 2025; (b) July 16, 2025; (c) July 18, 2025; (d) July 19, 2025; (e) July 21, 2025; (f) July

22, 2025; (g) July 23, 2025; (h) July 25, 2025; (i) July 26, 2025; (j) July 29, 2025; (k) July 30, 2025; (l) August 1, 2025; (m) August 2, 2025; (n) August 4, 2025; (o) August 6, 2025; and (p) August 7, 2025.

49. Upon information and belief, Defendant caused similar text messages to be sent to other individuals residing within this judicial District.

50. Automated telemarketing text messages, such as the ones made by Defendant, are subject to the TCPA. See Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

51. Under FCC guidance and well-settled case law, text messages constitute "calls" within the meaning of the TCPA. See *Gager v. Dell Fin. Services, LLC*, 727 F.3d 265, 269 (3d Cir. 2013); *Satterfield v. Simon & Schuster, Inc.,* 569. F.3d 946, 952 (9th Cir. 2009).

52. 47 C.F.R. § 64.1200(d) requires that a company implement certain minimum policies and procedures prior to making telemarketing calls.

53. These policies and procedures include maintaining a written policy, available upon demand, for maintaining a do-not-call list; training personnel engaged in telemarketing; and recording and honoring do-not-call requests when made.

54. Upon information and belief, Defendant does not have a written policy for maintaining an internal do-not-call list pursuant to 47 C.F.R. § 64.1200(d)(1).

55. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do-not-call list pursuant to 47 C.F.R. § 64.1200(d)(2).

56. Upon information and belief, Defendant fails to honor do-not-call requests – including as evidenced by the continued text messages to Plaintiff after she directly asked Defendant not to be contacted.

57. The text messages originated from a telephone number which, upon information and belief, is owned and operated by Defendant or on behalf of Defendant.

58. Plaintiff and the Class members have suffered concrete harm because of Defendant's unwanted and unsolicited text messages, including, but not limited to:

- Device storage consumption;
- Data usage;
- Lost time tending to and responding to the unsolicited text messages;
- Invasion of privacy;
- Intrusion upon seclusion;
- Nuisance;
- Aggravation; and
- Annoyance.

59. Defendant's text messages and phone calls also inconvenienced Plaintiff and caused disruption to her daily life.

60. These forms of injury are sufficient for Article III standing purposes.

61. Defendant directly initiated the unlawful text messages to Plaintiff and the other Class members and is directly liable for violating the TCPA.

## CLASS ALLEGATIONS

**PROPOSED CLASSES**

62.     Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of all other similarly situated persons as a class action.  The "Classes" that Plaintiff seeks to represent are comprised of and defined as:

> **Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this Complaint, received more than one advertising or telemarketing text message within a 12-month period from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number *after* making a communication indicating they wished to stop contact.**
>
> **Autodialed No Consent Class: All persons within the United States who, within the four years prior to the filing of this Complaint, received one or more text messages from Defendant or anyone on Defendant's behalf using an automatic telephone dialing system, placed to that person's cellular telephone number without that person's prior express written consent.**

63.     Defendant and its employees or agents are excluded from the Classes. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

64.      Plaintiff does not know the number of members in the Classes but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

65.     Upon information and belief, Defendant has sent violative calls to cellular telephone numbers belonging to thousands of consumers throughout the United States after they

10

had revoked consent to be contacted. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

66. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery and a review of Defendant's records. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

## **COMMONALITY**

67. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Among the questions of law and fact common to the Class are:

   i. Whether Defendant violated 47 C.F.R. § 64.1200(d);

   ii. Whether Defendant violated 47 C.F.R. § 64.1200(f)(9);

   iii. Whether Defendant's conduct was knowing and willful;

   iv. Whether Defendant adhered to requests by class members to stop sending solicitation text messages to their telephone numbers;

   v. Whether Defendant keeps records of text and call recipients who revoked consent to receive texts and/or calls;

   vi. Whether Defendant has any written policies for maintaining an internal do not call list;

   vii. Whether Defendant violated the privacy rights of Plaintiff and members of the class;

   viii. Whether Defendant is liable for damages, and the amount of such damages; and

   ix. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

68. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services after the consumer has opted out of further communication is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

69. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

## ADEQUACY

70. Plaintiff is a representative who fairly and adequately asserts and protects the interests of the Classes and has retained competent counsel experienced in complex class actions. Plaintiff has no interest antagonistic to those of either Class and Defendant has no defenses unique to Plaintiff. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

## SUPERIORITY

71. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the thousands or millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own

separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

72. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

73. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)
*Individually and on Behalf of the Internal Do Not Call Class*

74. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

75. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

76. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate… any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing

calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

77.  Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

78.  Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

79.  Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

80.  Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of Defendant, pursuant to 47 C.F.R. § 64.1200(d).

81. Because Plaintiff and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

82. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of actual monetary loss or up to $500.00 in statutory damages per violation, whichever is greater, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

83. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to treble damages of up to $1,500.00 per violation, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

84. Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

85. Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(f)(9)**
*Individually and on Behalf of the Autodialed No Consent Class*

86. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

87. Defendant and/or its agent sent multiple text messages to Plaintiff's and Class members' cellular telephone numbers using an automatic telephone dialing system ("autodialer") as defined by the TCPA, 47 U.S.C. § 227(a)(1), or using a dialing system that automatically transmitted messages from a stored list without human intervention, which may qualify as an

15

ATDS under applicable case law, depending on the system's specific functionality, post-*Facebook v. Duguid*.

88. Plaintiff and Class Members never provided Defendant with the express written consent as required by 47 C.F.R. § 64.1200(f)(9).

89. Defendant's autodialed messages were telemarketing in nature and were sent for the purpose of promoting its insurance services.

90. Defendant's use of autodialing technology to contact consumers without prior express written consent constitutes a clear violation of 47 U.S.C. § 227(b)(1)(A)(iii).

91. As a result of Defendant's violations, Plaintiff and Class members are entitled to an award of $500 in statutory damages per violation pursuant to 47 U.S.C. § 227(b)(3)(B).

92. If the Court finds Defendant's conduct was willful or knowing, Plaintiff and the Class are entitled to an award of up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3).

93. Plaintiff and Class members seek injunctive relief prohibiting Defendant from using autodialers or similar equipment to send unsolicited text messages without prior express written consent in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes, prays for the following relief:

i. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Marcus & Zelman, LLC as Class Counsel;

ii. An award of actual and statutory damages for each and every negligent violation to each member of the Internal Do Not Call Class and Autodialed No Consent Class pursuant to 47 U.S.C. § 227(b)(3)(B) and/or 47 U.S.C. § 227(c)(5);

iii. An award of treble, actual, or statutory damages for each and every knowing and/or willful violation to each member of the Internal Do Not Call Class and Autodialed No Consent Class pursuant to 47 U.S.C § 227(c)(5) and/or 47 U.S.C. § 227(c)(5);

iv. An order declaring that Defendant's actions, set out above, violate the TCPA;

v. An injunction requiring Defendant to cease all unsolicited text messaging and calling activity, and to otherwise protect the interests of the Class;

vi. Pre-judgment and post-judgment interest on monetary relief; and

vii. Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: September 8, 2025

/s/ Dawn M. McCraw
Dawn M. McCraw, Esq. (OR# 192645)
CONSUMER JUSTICE LAW FIRM
8095 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
Fax: (718) 715-1750
Email: dmccraw@consumerjustice.com
Attorneys for Plaintiff